IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kenneth Mayle, | ) |
| | ) |
| Plaintiff, | ) No. 17 cv 449 |
| v. | ) |
| | ) The Honorable Amy J. St. Eve |
| David Orr, et al., | ) Presiding Judge |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. (12(b)(6)**

Defendants, Governor Bruce Rauner and Attorney General Lisa Madigan, (collectively "Defendants'), by their attorney, Illinois Attorney General Lisa Madigan, pursuant to Fed. R. Civ. P. 12(b)(6), move to dismiss Plaintiff's Complaint for Declaratory, Injunctive and Other Relief ("complaint"). In support thereof, Defendants assert as follows:

**STATEMENT OF RELEVANT FACTS**

Plaintiff is a resident of Chicago who follows the religious philosophies of Satanism and Thelema. Pl.'s Comp. at ¶ 1, ECF No. 1. Satanism does not limit marriage between two individuals. *Id.* at ¶ 12. Adherents to Thelema engage in consensual sex with others known as "sex magic spiritual practices" *Id.* at ¶ 15. Plaintiff's religious and spiritual beliefs about relationships and intimacy do not preclude adultery. *Id.* at ¶ 9. Plaintiff intends to engage in a marriage in which he is simultaneously married to more than one spouse. *Id.* Plaintiff claims that he has not married prospective partners in the past out of fear that he would be prosecuted for the crimes of bigamy and adultery. *Id.* at ¶¶ 16, 19, 20, 21.

On January 20, 2017, Plaintiff filed his six-count complaint. Pl.'s Compl. In his complaint, Plaintiff alleges that the enforcement of the state criminal statutes of bigamy and

1

adultery violate the following rights: a) free exercise under the First Amendment ("First Claim for Relief"); 2) substantive due process under the Fourteenth Amendment ("Second Claim for Relief"); 3) establishment of religion under the First Amendment ("Third Claim for Relief"); 4) freedom of speech under the First Amendment ("Fourth Claims for Relief"); 5) equal protection under the Fourteenth Amendment ("Fifth Claim for Relief"); and "42 U.S.C. §1983 ("Sixth Claim for Relief"). *Id*. at ¶¶ 134-174. Plaintiff has sued Defendants in their official capacities only. *Id*. at ¶¶ 3, 5. He seeks declaratory and injunctive relief guaranteeing him the right to apply for multiple marriage licenses, *Id*. at ¶ 22, that his marriages receive legal recognition, *Id*. at ¶ 23, that the State bigamy and adultery laws no longer be enforced, *Id*. at ¶ 29, and that plural marriage be given equal protection under the law. *Id*. at ¶ 30.

## STANDARD OF REVIEW

In ruling on a motion under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Reger Development, LLC v. Nat'l City Bank,* 592 F.3d 759, 763-64 (7th Cir. 2010). The court must determine whether a plaintiff has alleged facts sufficient to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Seventh Circuit has interpreted this plausibility standard to mean that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010). Allegations that are "merely consistent with" the cause of action are insufficient to satisfy the plausibility standard. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Iqbal,* 566 U.S. at 555.

**ARGUMENT**

Plaintiff's claims should be dismissed for the following reasons: A) Plaintiff's claims against Defendant Rauner violate the Eleventh Amendment; and B) Plaintiff's constitutional claims against all Defendants fail to state plausible causes of action as they are precluded by long-established precedent.

**A) Plaintiff's Claims against Defendant Rauner Violate the Eleventh Amendment.**

A suit against a state or one of its agencies is barred by the Eleventh Amendment unless: 1) the state consents to suit in federal court; or 2) Congress uses its powers under the Fourteenth Amendment to abrogate the state's Eleventh Amendment immunity. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1984); *see also Kroll v. Board of Trustees of the University of Illinois,* 934 F.2d 904, 907 (7th Cir.). An official-capacity suit against a state official is a suit against the state and is therefore barred by the Eleventh Amendment absent a State's waiver or congressional override. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Robbins Resource Recovery Partners, L.P. v. Edgar*, 947 F.Supp. 1205, 1208-09 (N.D. Ill. 1996) (holding the governor immune from suit due to Eleventh Amendment). Although official-capacity suits for prospective injunctive or declaratory relief operate as an exception to Eleventh Amendment immunity, *Ex Parte Young,* 209 U.S. 123, 159–60 (1908), Plaintiff's request for prospective relief against Defendant Rauner will not suffice. *Ex Parte Young* only applies if the state official has some connection to the law's enforcement such that a there exists a "special relation" between the official and the challenged statute. *Ex Parte* Young, 209 U.S. at 157-58. The official's connection to enforcement can "arise[ ] out of the general law," or it can be created by the challenged statute itself, but what is of paramount importance is that the state officer, "by virtue of his office, has some connection with the enforcement of the act." *Id.* at 157. Pursuant to

3

this standard, it is clear that the Governor's general powers and obligation to ensure the "faithful execution of the laws" found in Illinois Constitution is insufficient to circumvent the Eleventh Amendment. *Weinstein v. Edgar*, 826 F. Supp. 1165, 1166-67 (N.D. Ill. 1993); *see also Illinois League of Advocates for the Developmentally Disabled v. Quinn*, 13 C 1300, 2013 WL 5548929 (N.D. Ill. Oct. 8, 2013) (collecting cases). As a result, the claims against Defendant Rauner, who has no "special relation" or enforcement power over the statutes challenged, must be dismissed.

### B) Plaintiff's Constitutional Claims Fails to State Plausible Causes of Action.

For well over a century the Supreme Court has held that states have a legitimate interest in protecting the institution of monogamous marriage. *Reynolds v. United States,* 98 U.S. 145 (1878). Therefore, notwithstanding the First Amendment, a state may criminalize the practice of bigamy even when the practice stems from sincerely held religious beliefs. *Id.* at 166. ("[I]t is within the legitimate scope of the power of every civil government to determine whether polygamy or monogamy shall be the law of social life under its dominion"). This is permissible, the *Reynolds* Court stated, because "[l]aws are made for the government of actions, and while they cannot interfere with mere religious beliefs and opinions, they may with practices." *Id.* at 166; *see also Employment Div., Dep't of Human Res.,* 494 U.S. 872, 878-79 (1990), *superseded by statute,* Religious Freedom Restoration Act of 1993, P.L. 103-141, 107 Stat. 1488, 42 U.S.C. § 2000bb (citing *Reynolds* in noting that "[w]e have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate."). The seminal holding of *Reynolds* has never been overruled, nor has the reasoning behind the Court's decision ever been seriously challenged. *See Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 68 n. 15 (1973) ("Statutes making bigamy a crime surely cut

4

into an individual's freedom to associate, but few today seriously claim such statutes violate the First Amendment or any other constitutional provision").

Consistent with *Reynolds*, courts have routinely held that a state's interest in criminalizing bigamy is justified by the state's legitimate interest in protecting the institution of marriage. *See, e.g., Utah v. Green*, 99 P.3d 820, 829-30 (Utah 2004). These paramount interests include, among others: the importance of monogamous marriage to society, the management and continuity of property rights and related laws stemming from the "civil contract" of monogamous marriage, preventing marriage fraud and misuse of legal benefits associated with marriage, and the protection of vulnerable individuals from exploitation and abuse. *Id*. In fact, not only have these interests in upholding monogamous marriage long been held to be legitimate, but in the context of constitutional analysis, they are "compelling." *Potter v. Murray City*, 760 F.2d 1065, 1070 (10th Cir. 1985) ("In light of these fundamental values, the State is justified, by a compelling interest, in upholding and enforcing its ban on plural marriage to protect the monogamous marriage relationship"), *cert. denied,* 474 U.S. 849 (1985); *see also Bronson v. Swensen,* 394 F.Supp.2d 1329, 1332 (D. Utah 2005) (relying on *Potter* in holding "the law in the Tenth Circuit is that the State of Utah has a compelling state interest in banning plural marriage"), *vacating as moot*, 500 F.3d 1099 (10th Cir. 2007).

As a preliminary matter, none of Plaintiff's constitutional challenges are novel. In fact, they have all been previously rejected. *Utah v. Holm*, 137 P.3d 726 (Utah 2006) (rejecting First Amendment, due process and equal protection challenges to state bigamy statute), *cert. denied,* 549 U.S. 1252 (2007). Nevertheless, a short analysis is in order. Turning to the statutes in question, both the Illinois bigamy[1] and adultery[2] statutes are content neutral and of general

---

[1] In pertinent part, the Illinois bigamy statute states: "(a) Bigamy. A person commits bigamy when that person has a husband or wife and subsequently knowingly marries another. (a-5) Marrying a bigamist. An

5

applicability. Neither discriminate on the basis of religion nor can any credible claim be made that they are intended to do so. As a result, the constitutionality of the statutes is subject to rational basis review. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531 (1993) ("In addressing the constitutional protection for free exercise of religion, our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice"). But, even if the statutes were not neutral, based on the same state interests cited previously, *see supra* p. 5, the statutes survive strict scrutiny as the State's interests in criminalizing bigamy and adultery are compelling. *Potter*, 760 F.2d at 1070 (10th Cir. 1985) ("In light of these fundamental values, the State is justified, by a compelling interest, in upholding and enforcing its ban on plural marriage …."). As a result, regardless of the level of scrutiny applied, Plaintiff's First Amendment challenges fail to state a plausible causes of action and must therefore be dismissed.

As for Plaintiff's equal protection claim, the same analysis controls. Pursuant to an equal protection analysis, it must be determined whether the act in question impacts a fundamental right or targets a suspect class. *See Heller v. Doe*, 509 U.S. 312, 319 (1993). When no suspect class or fundamental right is involved, the action will be upheld under the rational basis test so long as it "bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631

---

unmarried person commits marrying a bigamist when that person knowingly marries another under circumstances known to him or her which would render the other person guilty of bigamy under the laws of this State." 720 ILCS 5/11-45 (2011).

[2] In pertinent part, the Illinois adultery statute states: "A person commits adultery when he or she has sexual intercourse with another not his or her spouse, if the behavior is open and notorious, and (1) The person is married and knows the other person involved in such intercourse is not his spouse; or (2) The person is not married and knows that the other person involved in such intercourse is married." 720 ILCS 5/11-35(2011).

(1996). When, however, a suspect class or fundamental right is involved, state action must survive strict scrutiny. *See Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir.2009). This same analysis applies when dealing with substantive due process challenges to legislation. *Christensen v. County of Boone, Illinois,* 483 F.3d 454, 462 (7th Cir. 2007). Plaintiff is not a member of any suspect class and, although the right to marry is a fundamental right, *Loving v. Virginia,* 388 U.S. 1 (1967), the right to engage in polygamy is not. *Holm*, 137 P.3d at 742; *see also Brown v. Buhman*, 947 F.Supp.2d 1170, 1195-96 (D. Utah 2013), *vacating as moot*, 822 F.3d 1151, 10th Cir. (2016). As such, Plaintiff's equal protection claim and substantive due process claims fail for the same legitimate state concerns that render his First Amendment claims implausible. *See Holm*, 137 P.3d at 745 (dismissing equal protection and due process challenges to state bigamy law).[3]

      Finally, Plaintiff claims that recent Supreme Court precedent, most notably, *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), has eroded the underpinnings of *Reynolds* by suggesting a path towards recognizing plural marriage. Pl.'s Compl. at ¶¶ 116-121. Specifically, Plaintiff alleges that the majority's reasons for holding marriage to be a fundamental right apply equally to plural marriage. *Id*. at ¶ 118. As a result, Plaintiff claims that "the State has no greater interest in preventing plural marriages than they did same sex ones." *Id*. at ¶ 45. Plaintiff's argument misses the point. The right to marriage is a fundamental right, *Loving v. Virginia*, 388 U.S. 1, a type of right so "deeply rooted in this Nation's history and tradition," and so "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if [it] were sacrificed."

---

[3] It must be noted that Plaintiff's substantive due process claims also fails because the First Amendment explicitly covers his alleged deprivations. As the Supreme Court has held, when a particular Amendment provides an explicit textual source of constitutional protection against government behavior, that Amendment, not the more generalized notion of substantive due process, must guide the analysis. *Albright v. Oliver,* 510 U.S. 266, 273 (1994); *see also Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir.2005) ("[C]onstitutional claims must be addressed under the most applicable provision.").

*Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). The right to marry multiple spouses is certainly not. The appropriate question then is not whether plural marriages benefit society in a similar fashion as monogamous marriage, a debatable proposition, but whether the State's interests in criminalizing plural marriage are legitimate. The interests consistently invoked to uphold the ban on polygamy/bigamy such as marriage fraud and protection of the vulnerable, *see supra* p. 5, do not generally concern monogamous marriage, whether between opposite or same sex partners. However, as numerous courts have indicated, these interests are relevant to plural marriage and therefore are legitimate reasons to uphold the criminalization of bigamy. *See, e.g., Green*, 99 P.3d at 829-30. To be certain, Plaintiff can marry most anyone he chooses. This is his fundamental right and, with very limited exceptions, no constitutional justification exists to hold otherwise. But legitimate and, in fact, compelling state interests exist which preclude Plaintiff's desire to engage in polygamous marriage. *Obergefell* doesn't alter this fact. As a result, Plaintiff's claims must be dismissed.

WHEREFORE, Defendants respectfully requests this Court to dismiss Plaintiff's Amended Complaint and award any other relief this Court deems just and equitable.

    Respectfully submitted,

    Lisa Madigan
    Illinois Attorney General

    By: /s/ *T. Andrew Horvat*
    T. Andrew Horvat (6277684)
    Assistant Attorney General
    100 W. Randolph St., 13th Fl.
    Chicago, IL 60601
    (312) 814-5484
    thorvat@atg.state.il.us